IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CYPRESS ASSOCIATES, INC. | § | Case No. 17-30491-H1-11 |
| | § | |
| Debtor | § | |
| | § | Chapter 11 |

### DEBTOR'S EMERGENCY MOTION FOR PRELIMINARY AND FINAL USE OF CASH COLLATERAL

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE BANKRUPTCY JUDGE OF SAID COURT:

COMES NOW, **CYPRESS ASSOCIATES, INC.**, (the "Debtor") Debtor and Debtor-in-Possession, and makes this its Debtor's Emergency Motion for Use of Cash Collateral, pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1(b), and in support thereof would show this Court as follows:

## I. Jurisdiction and Venue

1. This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Court has the constitutional authority to enter a final order in this matter, and if it determines it does not have the constitutional authority to enter a final order, the Debtor consents to entry of a final order by this Court.

## II. Background Facts

2. On January 31, 2017, the Debtor filed its voluntary petition under Chapter 11, Title 11 of the United States Code. The Debtor remains in possession of its property and is operating as a Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No request had been made for appointment of a trustee or examiner and no official committee has been established in this case.

3. The Debtor is a corporation duly incorporated under the laws of the State of Texas and is in good standing with the State of Texas. The Debtor owns and operates an insurance brokerage located at 11720 Katy Freeway, Suite 1600, Houston, TX 77079. The Debtor was formed on February 12, 2009. It offers a variery of insurance products including health, life, and well-being policies underwritten by Philadelphia American Life Insurance Company/New Era Life Insurance Company ("PALIC"). Debtor leases its office space from PALIC on a month-to-month basis.

4. On September 1, 2014, Debtor and PALIC entered into negotiations for a Marketing and Production Agreement (the "Marketing Agreement") while not a direct party to the Agency and Sponsorship Agreement between Debtor and Rising Star Management Group, LLC, PALIC agreed to advance Debtor's costs associated with that agreement. The Marketing Agreement was not executed until February 23, 2015. The Marketing Agreement contained four main components:

a. An Agency and Sponsorship Agreement, whereby Rising Star Management Group, LLC ("Rising Star") agreed to act as the exclusive agency of record for Debtor in the 2014 and 2015 NASCAR Sprint Cup Series (the "Racing Program") and the NASCAR Nationwide and Camping World Truck series, to place sponsorships for Debtor in the Racing Program;

b. PALIC agreed to advance the amount of $2,649,999.96 to Debtor, payable to Rising Star, for advertisement and sponsorship placement of Debtor's branding;

c. A Personal guarantee and Right of Offset, executed by Barry Glenn, as Debtor's president. The Right of Offset grants PALIC a security interest and contractual right of offset against any commissions, monies, or accounts, whether individual or otherwise, in which Glenn may have an interest, present or future, for any and all obligations of the Debtor, and

d. A Commission Assignment Agreement, in which Debtor granted PALIC a security interest in and assigned to PALIC all commissions, whether weekly, initial or renewal, earned by Debtor, including its employees or agents, from the marketing and/or issuance of any insurance product offered by PALIC or any other insurance company.

A true and correct copy of the Marketing Agreement, along with attachments, is attached hereto, incorporated herein for all purposes, and marked Exhibit "I".

5. According to the Promissory Note, Debtor was to pay PALIC 11 monthly payments of $100,000.00, commencing on May 1, 2015, and one final payment of $1,637,994.48, payable on April 31, 2016. See, Marketing Agreement, Exhibit B. Pursuant to the Marketing Agreement, PALIC advanced the amount of $1,104,166.65 to Rising Star; PALIC did not advance the full amount of $2,649,999.96 to Rising Star, though. PALIC has been offsetting Debtor's rights to insurance commissions. To date, PALIC has offset $832,441.93 against the amounts it advanced to Rising Star. Upon information and belief, PALIC is owed approximately $271,724.72 from the amounts it advanced to Rising Star.

6. A dispute arose between Debtor and Rising Star over the value of the agency and sponsorship agreement. Rising Star filed suit in Iowa state court against Debtor to recover the full amount due and owing under the Marketing Agreement. The case was assigned Case No.

of its business in the ordinary course. The Debtor also requests, upon notice and a hearing, a final order authorizing its continued use of cash collateral.

## IV. Argument and Authorities

9. Under 11 U.S.C. §363(c)(2), a debtor may use its cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Under 11 U.S.C. §363(c)(3), the Court must condition the debtor's use of its cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

10. At a hearing on a debtor's motion for use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien. 11 U.S.C. § 363(p).

11. The Debtor requests interim authorization to use Cash Collateral as set forth in the Interim Budget until a final order granting further use of Cash Collateral can be entered. The Debtor is without sufficient funds, other than the Cash Collateral, to operate for fourteen or more days until a final hearing on this Motion can be held. The Debtor's inability to timely pay the costs and expenses set forth herein will result in immediate and irreparable harm to the estate. Because the Debtor's request for interim authorization seeks the use of only that amount of Cash Collateral as is necessary to avoid immediate and irreparable harm to the value of the estate pending a final hearing, the request complies with Rules 4001(b)(2) and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12. The Interim Budget (Exhibit II) itemizes the sources and uses of cash expenditures. The Interim Budget includes a list of business expenses that are reasonable and necessary and that

must be paid until such time as a final hearing on the Motion can be held. The Debtor proposes that any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtor in any subsequent week, on a line-item basis.

13. The Debtor also requests that the Court authorize it to continue to use Cash Collateral on a final basis as will be set forth in a final budget to be submitted to the Court in connection with a final hearing on the Motion.

14. Bankruptcy Code § 363(e) provides that "on request of an entity that has an interest in property used . . . or proposed to be used . . ., the court . . . shall prohibit or condition such use. . . as is necessary to provide adequate protection of such interest." Bankruptcy Code § 361 sets forth a non-exclusive list of forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. A determination of adequate protection is decided on a case-by-case basis, involving a consideration of the "nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection." *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986). The purpose of adequate protection is to ensure that a secured party's economic position is not worsened because of the filing of a bankruptcy case. *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006).

15. The Debtor proposes to adequately protect PALIC'S interest in its collateral by making monthly adequate protection payments in the amount of $25,000.00 per month, which represents approximately 8.5% of PALIC's claim. In addition, the Debtor will provide PALIC with information relating to actual expenses and any variances from the Interim Budget. This information will enable PALIC to monitor its interests in the pre-petition collateral and ongoing post-petition cash collateral. Reporting of financial information is also a sufficient form of adequate protection. *See, e.g., Mutual Benefit Life Ins. Co. v. Stanley Station Assocs., L.P. (In re Stanley Station Assocs., L.P.)*, 140 B.R.

806, 809 (D. Kan. 1992) ("In addition, we believe the request of MBL for 'timely filing of proper monthly operating reports . . .' falls within the ambit of adequate protection . . . ."); *Sumitomo Trust & Banking Co. v. Holly's, Inc. (In re Holly's, Inc.)*, 140 B.R. 643, 706 (Bankr. W.D. Mich. 1992) (reports required as part of adequate protection). Debtor, however, reserves the right to review and/or object to the status of the commission assignment agreement, and nothing herein should be construed as an admission of the validity, extent or priority of PALIC's lien under state, federal, or other applicable law.

16. Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the U.S. Trustee; (b) PALIC; (c) each of the Debtor's 20 largest unsecured creditors; (d) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and the Local Bankruptcy Rules; and (e) those persons or entities that have formally appeared and requested service in these Cases pursuant to Rule 9010(b) of the Bankruptcy Rules.

17. For the reasons stated previously herein, the Debtor submits that the relief requested is necessary to prevent immediate and irreparable harm to the Debtor's estate.

18. Furthermore, to successfully implement the foregoing, the Debtors request a waiver of the notice requirements of Bankruptcy Rule 6004(a). The exigent nature of the relief sought herein justifies immediate relief, which is necessary for the Debtor to be able to continue to operate its business and preserve value in the estate.

## V. Need for Emergency Relief

19. The Debtor requests an emergency hearing on this motion, because the Debtor has immediate cash needs. The Debtor is an insurance broker. In order to stay open for business, it must administer insurance policies on an almost daily basis. Any delay could cause the Debtor's failure to

LACL133432, and was filed in the Polk County District Court of Iowa. On or about January 29, 2016, Debtor and Rising Star entered into a settlement agreement and confession of judgment whereby Debtor agreed to pay Rising Star the principal amount of $1,556,708.35 in monthly installments of $250,000.00. Payments were made until May, 2016, when Debtor defaulted on the payments. Rising Star domesticated its judgment in Texas on or aobut June 17, 2016, in 190th Judicial District Court of Harris County, Texas, and is pending under Case No. 2016-41514. On or about January 19, 2017, Rising Star moved for, and was granted, application for the appointment of a receiver. On June 22, 2016, Rising Star also garnished funds in the Debtor's bank at Bank of America, N.A., in the amount of $19,055.27; Rising Star garnished another bank account at Bank of America, N.A., freezing the amount of $30,039.97 on July 13, 2016, totaling $50,039.97. In addition Bank of American has frozen an account belong to an entity related to the Debtor in the name of Cypress Associate Administrators, which is holding the sum of $62,463.67. Those funds are still frozen.

7. Debtor generates approximately $100,000.00 in commissions from the servicing of the insurance products; however, as PALIC is the underwriter, it has beein withholding fifty (50%) percent of the commissions, which it has been applying to the Rising Star loan. The remaining payments due to Debtor are approximately $50,000.00. Debtor's monthly operations are covered by commissions paid to it under the insurance policies underwritten by PALIC. According to the Commission Assignment Agreement, PALIC asserts a right to the present and future commissions Debtor generates. Thus, the Debtor's available cash constitutes cash collateral under 11 U.S.C. §363(c).

### III. Relief Requested

8. The Debtor requests preliminary use of its cash collateral to pay its necessary expenses

administer these plans and force it to cease operations.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that this Court approve the Debtor's preliminary use of its cash collateral, set a final hearing and after hearing testimony at a final hearing, approve the Debtor's continuing use of its cash collateral, and grant such other and further relief to which the Debtor may be entitled.

Respectfully submitted,

THE BURGER LAW FIRM

By: /s/ John V. Burger
John V. Burger
Texas Bar No. 03378650
4151 Southwest Freeway, Suite 770
Houston, TX 77027
Tel:   713 960 9696
Fax:   713 961 4403
Email: johnburger@burgerlawfirm.com

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served upon those entities listed below via the Court's PACER/ECF system and via United States regular mail, first class postage prepaid, on this the 31st day of January, 2107.

**U.S. Trustee**
U.S. Trustee
515 Rusk Avenue, Room 3516
Houston, Texas 77002

Cypress Associates, Inc.
11720 Katy Freeway, Suite 1600
Houston, TX 77079

Philadelphia American Life Insurance Company
New Era Life Insurance Company
11720 Katy Freeway, Suite 1700
Houston, TX 77079

**IRS Notice**
Internal Revenue Service
1919 Smith Street, 5021 HOU
Houston, TX 77002

Twenty Largest Unsecured Creditors listed on Exhibit "A".

_____
John V. Burger